## THE STATE v. LEA.

1. The charge on an affidavit before a justice of the peace that M'H and P D W, took and *feloniously carried away* a certain hog, is in legal import, a charge of larceny, and may be alleged, in an indictment for perjury, as charging and intending to charge that the hog was *feloniously taken, stolen* and carried away.

2. When the affidavit upon the charge of perjury as founded, merely states the belief of the affiant, that a larceny has been committed; the assignment of the perjury must negative the words of the affidavit, and it is not sufficient to allege generally that the persons charged had not committed the larceny; it is necessary, when the defendant only states his belief, to aver that the fact was otherwise, and that the defendant knew the contrary of what he swore.

Question reserved by the Circuit Court of Cherokee county.

THE defendant was indicted for the crime of perjury, and tried and convicted at the last fall circuit.

After the conviction, he moved in arrest of judgment, that the indictment was not sufficient in law to authorise the sentence, and the Circuit Court considering the question presented by the record as novel and difficult, reserved it for the consideration of the Supreme Court.

The indictment charges the perjury to have been committed in an affidavit made before a justice of the peace for Cherokee county, in these terms:

This day personally appeared before me, B. G. Pollard, an acting justice, &c. Wm. Lea, who after being duly sworn, saith on oath, [that] he does believe that Martin Hail and Pleasant D. Willmoth, some time in the year 1839, did take and feloniously carry away, a certain hog, belonging to the said Lea, contrary to law and the dignity of the State of Alabama.

After setting out the affidavit, the indictment proceeds thus: "he, the said William Lea, meaning and intending, and charging thereby, upon his oath aforesaid, so as aforesaid taken, that the said Martin Hail and the said Pleasant D. Willmoth, did on the day and year aforesaid, in the county aforesaid, feloniously steal, take and carry away, a certain hog, the property of the said William Lea." The assignment of the perjury is then made in these terms: "Whereas, in truth, and in fact, the said Martin Hail and the said Pleasant D. Willmoth, or either of them, did not at any time, in any year of our Lord, feloniously take, steal, and carry away, a hog, the property of the said Wm. Lea

And whereas, in truth and in fact, the said Martin Hail did not, either in the year of our Lord 1839, or in any other year of our Lord, feloniously take, steal, and carry away a hog, the property of the said Wm. Lea.

And whereas, in truth and in fact, the said Pleasant D. Willmoth did not, either in the year of our Lord, 1839, nor did he in any other year of our Lord, feloniously take, steal, and carry away a hog, the property of the said William Lea.

And whereas, in truth and in fact, the said Martin Hail and the said Pleasant D. Willmoth, did not, in the year of our Lord, 1839, nor did they in any other year of our Lord, feloniously take, steal, and carry away, a certain hog, the property of the said William Lea.

The formal parts of the indictment were not objected to.

MOORE, for the defendant, made two objections to the indictment.

1. That the *inuendo* was not properly laid, as the charge contained in the affidavit is, that the prosecutors took and *feloniously carried* away a hog, &c. and this does not import or mean that they *feloniously took, stole* and carried away.— Rex v. Aylett, 1 Term Rep. 70; 2 Russell, 543; 1 Sand. 243.

2. That the perjury is not well assigned, because the issue tendered is, that the prosecutors did not steal the hog, which might be true, and yet consist with the defendant's innocence. He did not swear that they stole the hog, but merely that he *believed* they took and feloniously carried it away. 2 Russell, 542; 2 Ch. C. L. 312; 4 Went. 231.

ATTORNEY GENERAL, contra.

GOLDTHWAITE, J.—The first question raised upon this indictment, is, whether the pleader was authorised to assume that the charge of taking and feloniously carrying away a certain hog of another, contained in the affidavit upon which the perjury is assigned, is legally equivalent to the assertion, that a larceny had been committed, or in other terms, that the defendant intended thereby to charge the prosecutor with feloniously taking, stealing and carrying away his hog.

We do not entertain the slightest doubt of the propriety of this *inuendo.* We are not to look for technical precision and accuracy, in the proceedings of the class of officers, before one of which the affidavit was taken, and when inapt or inartificial terms are used in their proceedings, common sense requires them to be construed according to their popular acceptation and meaning, unless they are connected with others, by which such a presumption is necessarily repelled. It ought not to be tolerated, that one shall excuse himself from the liability to either a civil or criminal prosecution, because his false or offensive language is not strictly technical.

The charge contained in the affidavit, in legal import, is a charge of larceny, and being so, it was perfectly correct to allege that such was the meaning and intention of the defendant. It does not differ from the ordinary case of speaking of another,

that he is a thief, which always has been held to support the *inuendo*, that the speaker thereby intended to make a charge of larceny.

2. The other question is one of more difficulty, and this difficulty arises from the fact, that whether the false oath is direct and positive, or is only the assertion of a belief, the evidence necessary to authorise a conviction for perjury, is very similar, and perhaps it is not going too far to say that it is identical.

But the identity of the evidence necessary to sustain the indictment, whether the perjury was committed in the one form or the other, is not the test by which the propriety of the averments is to be ascertained. The statute has declared that it shall be sufficient to set forth the substance of the offence charged on the defendant, and by what Court, or before whom the oath was taken, averring such Court, person or persons, to have competent authority to administer the same, together with the proper averment or averments, to falsify the matter or matters, wherever the perjury or perjuries is, or are assigned. Aikin's Digest, 118, § 22; and from this it may fairly be inferred, that it was intended that some specific averment, directly showing the falsity of the matter sworn to, should be made. If it were otherwise, the general assertion that the defendant falsely, corruptly and wilfully swore, might be considered as sufficient. But this was not sufficient at common law, and would be in direct opposition to the statute.

The object of the assignment then, is to apprise the defendant of the precise matter in which the perjury is said to consist, and in this connexion it apprises him with certainty of the exact point upon which he must be prepared. In this view, it becomes of the utmost importance that the assignment should precisely contradict the matter sworn to.

In the present case, the matter sworn to was not that the prosecutors committed a larceny, though the effect of the affidavit was to charge them with that crime, and thereby to commence a prosecution, but was, that the defendant *believed* they had committed such a crime. The averment in the indictment that no such crime was committed by them, does not show that the defendant swore falsely. In order for the assignment to produce this consequence, it should also have been averred that the defendant well knew the contrary of that of

which he stated, his belief to be true. Such are the most approved precedents. 2 Chitty, C. L. 312, 320; 4 Went. 231; Roscoe's Cr. Ev. 684; 2 Russ. 542.

We are compelled to resort to precedents as persuasive authority, in the absence of decision upon this point, but independent of them, we think it clear, from the reason of the thing, that the assignment should form an issue upon the precise matter sworn to.

In the case of the King v. Perrott, 2 M. & P. 379, the indictment was for obtaining money on false pretences, and the averment was, that the prisoner unlawfully, wickedly, knowingly, and designedly, did falsify, pretend, &c. it was held to be necessary, in addition to all this, to expressly aver, that the pretence made use of, was false and untrue. Lord Ellenborough then said, "every indictment ought to be so framed as to convey to the party charged, a certain knowledge of the crime imputed to him; and after comparing that case to a case of perjury, he proceeds, "the convenience also of mankind demands, and in furtherance of that convenience, it is a part of the duty of those who administer justice, to require that the charge should be specific, in order to give notice to the party, of what he is to come prepared to defend, and to prevent his being distracted amidst the confusion of a multifarious and complicated transaction, parts of which only are meant to be impeached for falsehood."

The opinion just quoted, shows very clearly that the object of the assignment, in the case of perjury, is to apprise the defendant of the precise matter urged against him; but in this indictment, so far from that being done, it would almost seem to have been to advise him that the matter in issue was the innocence of the prosecutors, instead of his own guilt.

Our conclusion is, that the indictment is defective for want of a proper assignment of the perjury, and the judgment of the Circuit Court is reversed.

The case is remanded, in order that a new indictment may be preferred, and such other proceedings had, as are in conformity to law.

If the defendant is in custody, he will be detained until discharged by due course of law.